# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ERNEST DODD, SR. )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CHERRY LINDAMOOD, )<br>    Defendant. ) | Civil No. 3:11-cv-1090<br>Judge Trauger/Frensley |

## ORDER

Ernest Willard Dodd, Sr. ("Petitioner"), a state prisoner, filed this action under 28 U.S.C. § 2254 seeking a writ of habeas corpus to set aside his convictions for initiating a process intended to result in the manufacture of methamphetamine and attempt to promote the manufacture of methamphetamine. *See* Docket 23. Petitioner filed a Motion for Discovery (Docket No. 46), which was denied in part and granted in part by the Court. *See* Docket No. 54. Through discovery permitted by the Court, Petitioner identified a written statement in the prosecutor's file that was not given to Petitioner during the discovery process in state court. Docket No. 57, p. 5, n. 2.

Before the Court is Petitioner's Motion for Evidentiary Hearing, or, in the Alternative, Motion to Expand the Record, in which Petitioner contends that he should be allowed to present evidence substantiating his claim under *Brady v. Maryland*, 373 U.S. 83 (1963) that the State withheld material evidence from Petitioner during discovery in state court. *See* Docket No. 57, pp. 6-9. Relatedly, in Petitioner's Motion for Leave to File Second Amended Petition, he asks the Court for permission to amend his petition again to include a claim based on an alleged violation of the rule of law established in *Brady*. Docket No. 59, p. 1. Respondent has filed a consolidated Response in opposition to the motions. Docket No. 68. Petitioner has filed a Reply. Docket No.

69.

For the reasons set forth below, each of Petitioner's motions are DENIED.

## I. BACKGROUND

The facts relevant to Petitioner's underlying case are as follows:

In July of 2010, the Warren County Sheriff's Office was running surveillance on the apartment of Lance and Connie Vogel. Mrs. Vogel had been used by the police before as an informant for information about different people and crimes on the street level. During the surveillance, Marc Martin, an investigator, saw Ronnie Minton and Appellant ["Petitioner"] leaving the Vogel's apartment. As Appellant left, Detective Tony Jenkins who was assisting in the surveillance of the apartment went to the door of the apartment and immediately smelled a strong odor of methamphetamine and air freshener. Investigator Martin spoke with Appellant, whom he had known for quite some time. Investigator Martin described Appellant as "enraged."

Appellant consented to a search of his person. There was nothing on his person. Appellant gave a statement to police in which he explained that the police did not find anything on his person because he saw police coming and ate a bag of methamphetamine. Police found several cut straws and a Coleman can in the truck in which Appellant was riding. The truck belonged to co-defendant Minton. Investigator Martin testified that the items by themselves were not "anything" but that people often snorted methamphetamine through cut straws.

Appellant gave a statement in which he admitted to smoking methamphetamine and eating a bag of methamphetamine. He denied manufacturing methamphetamine. Appellant admitted that he spent the night at the Vogel's apartment and went to the store with co-defendant Minton to look for lithium batteries. Appellant stated that he would have smelled the methamphetamine if it were cooking while he was in the apartment.

A search warrant was obtained for the Vogel apartment where officers seized a large number of known precursors to the manufacture of methamphetamine. As a result, Appellant, Mr. and Mrs. Vogel, and Mr. Minton were indicted by the Warren County Grand Jury for one count of initiating a process intended to result in the manufacture of methamphetamine and one count of promoting the manufacture of methamphetamine.

At trial, Mrs. Vogel testified that Appellant smoked methamphetamine on aluminum foil at the apartment. Mrs. Vogel personally observed Appellant with scales, filters, lye, cold packs, and pills on the floor of the apartment. Mrs. Vogel testified that Appellant placed a filter on the scales and poured out the lye. She claimed that she took her medicine and went to bed while the men cooked the

methamphetamine.

Mr. Vogel testified that he pled guilty to the charges he received in this case and got a total effective sentence of forty years. He admitted that he cooked methamphetamine and confirmed that Appellant was at his apartment on the night in question. According to Mr. Vogel, the three men cooked and consumed methamphetamine that night at the apartment. Appellant participated by weighing "some stuff out" and using the container of lye. Appellant also cut open the cold packs to access the ammonium nitrate. He poured this substance in a bag. Appellant also "had a jug fixed up with a hose coming out of it and was going to gas off what he had poured off of a shake jug" while Mr. Vogel dropped aluminum foil balls into the muriatic acid to cause the reaction. Mr. Vogel admitted that he sprayed air freshener and turned on the exhaust fan in order to try to cover up the smell.

Appellant's thirteen-year-old son, Dakota Bennett, testified for the defense. Mr. Bennett testified that he overhead a conversation between Mrs. Vogel and Appellant in which she stated that Appellant had nothing to do with cooking methamphetamine in this case.

Devin Carter, a close friend of Appellant, stopped by the Vogel's apartment on the night of July 15, 2012. He got "into it" with Mr. Vogel. At one point, Mr. Vogel pulled out a knife and stabbed the television. Mr. Carter did not see any evidence of methamphetamine cooking but admitted that he was only at the apartment for about ten minutes.

At the conclusion of the proof, the jury found Appellant guilty of initiating a process to manufacture methamphetamine and attempt to promote the manufacture of methamphetamine. The trial court sentenced Appellant as a Range II, multiple offender to nineteen years for the conviction for initiating a process to manufacture methamphetamine and four years for the conviction for attempt to promote the manufacture of methamphetamine. The trial court ordered the sentences to be served concurrently.

*State v. Dodd*, No. M2011-02259-CCA-R3CD, 2013 WL 2296168, at *1-2 (Tenn. Crim. App. May 23, 2013).

As is apparent from the above facts, Mr. Minton did not testify at Petitioner's trial. *See* Docket No. 57, p. 5. Petitioner's trial counsel subpoenaed Mr. Minton to trial (*Id.* at 4 (citing Docket No. 37-16, p. 19-20; Docket No. 37-16, p. 16)); however, through information obtained from Mr. Minton prior to trial, Petitioner's counsel decided not to call Mr. Minton as a witness. *Id.* at 5. Unknown to Petitioner's trial counsel, the State possessed a statement written by Mr.

Minton about a month after Minton was arrested. *Id.* (citing Docket No. 57-1, pp 1-2). Thus, the document at issue in Petitioner's motions is Mr. Minton's written statement held in the State's possession but not provided to Petitioner during discovery in state court.

## II. LAW AND ANALYSIS

### A. Petitioner's Motion for Evidentiary Hearing, or, in the Alternative, to Expand the Record.

In support of Petitioner's Motion for Evidentiary Hearing, or, in the Alternative, Motion to Expand the Record, Petitioner first argues that he has "alleged sufficient grounds for relief" because the evidence of Mr. Minton's statement could have been used by the defense to attack the Vogels' credibility. *Id.* at 7. As support, Petitioner states that "the Vogels could have been impeached by having Minton testify because his story conflicted sharply with theirs." *Id.* at 7-8. Further, Petitioner contends that, "according to Minton, [Connie Vogel] was guilty; she was selling the drug, her brother was their source of the pills, and she was evidently involved in cooking the drug in the bedroom on the day in question." *Id.* at 8. Having been able to examine Mr. Minton on that point, Petitioner argues, "would have given the jury an affirmative reason to doubt the reliability of the Vogels – and thus would have given them reason to conclude that the Vogels were simply trying to push responsibility off on [Petitioner]." *Id.* Petitioner further acknowledges that "Minton apparently would have said that [Petitioner] was involved in the making" of methamphetamine but contends that "his assertion on that point would have been offset by a very important point that Minton himself would have established: That he and [Petitioner] had only met once ever, *i.e.*, on the day in question" *Id.* (citing Docket No. 37-16, p. 13). When considering the additional fact that Mr. Minton had lived with the Vogels for "several weeks," Petitioner contends, such evidence would make it "seem more likely [Petitioner] was a mere customer, rather than, as the Vogels claimed, someone *who showed up contemporaneously with Minton to help*

4

*Minton* make the methamphetamine." *Id.* (emphasis original). "[H]ad he been able to present Minton's story (through Minton testifying)," Petitioner maintains, his "defense would have been stronger." *Id.*

Second, Petitioner contends that the "relevant facts are in dispute" since "Minton's statement was withheld from the defense" and "Minton would have testified at Dodd's trial to the same thing he put in his written statement. *See Id.* at 9. Lastly, Petitioner asserts that "the state courts did not have a hearing on this matter." *Id.* Petitioner contends that he is excused from having previously raised the issue in state court "because the State withheld Minton's written statement from Dodd until he got it through federal discovery." *Id.*

In response, Respondent first argues that "Petitioner has fallen far short of satisfying the actual-innocence showing to obtain an evidentiary hearing under Section 2254(e)(2)(B) for his newly-discovered, defaulted *Brady claim*." Docket No. 68, p. 3 (citing Docket No. 57, p. 1). In support of this argument, Respondent asserts that "Minton's statement does not establish Petitioner's actual innocence" because "the statement indicates that Minton believed Petitioner and the Vogels 'were doing a deal but Minton was not for sure what they were doing.'" *Id.* (quoting Docket No. 57-1, p. 1). Respondent further states that Petitioner's concession "that Minton 'apparently would have said that Petitioner was involved in the making' of methamphetamine . . . negates an actual innocence showing." *Id.* (quoting Docket No. 57, p. 8.).

Second, Respondent argues that "Petitioner is also unentitled to expansion of the record" because Petitioner has not shown actual innocence (*Id.* at 3-4) and "[e]xpansion of the record is also premature." *Id.* at 4. In support of the argument that Petitioner has not shown actual innocence, Respondent states, "[i]f a petitioner moves to expand the record, 'the petitioner ought to be subject to the same constraints that would be imposed if he had sought an evidentiary

hearing.'" *Id.* at 3-4 (quoting *Samatar v. Clarridge*, 225 F. App'x 366, 375 (6th Cir. 2007)). Respondent further asserts that "Petitioner's argument only concerns the potential impeachment value of Minton's statement, which fails to show actual innocence necessary to obtain expansion of the record under Section 2254(e)(2)(B) and *Samatar*." *Id.* at 4.

In support of the second argument that "[e]xpansion of the record is premature," Respondent contends that "Rule 7 implies that the court should not permit expansion of the record if the pleadings and the state-court record adequately resolve the petitioner's claims." *Id.* (citing *Flores v. Holloway*, No. 3:17-cv-246, 2018 WL 573121, at *2 (M.D. Tenn. Jan. 26, 2018). In support, Respondent points to the advisory comments, stating:

> the purpose of the rule is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing. Unless it is clear from the pleadings and the files and records that the prisoner is entitled to no relief it may be perfectly appropriate for the district court to proceed by requiring the record be expanded.

*Id.* (quoting SECT 2254 Rule 7, Advisory Committee's note) (Internal quotations and citations omitted). Based on Rule 7 and its advisory comments, Respondent maintains that "[u]nder Rule 7(a), the Court has not decided Petitioner's claims using the state-court record and the current pleadings," and, allowing Petitioner to expand the Record "would violate the plain language of Rule 7(a) because the petition has not been adjudicated." *Id.* at 4-5. Accordingly, Respondent requests the Court to deny Petitioner's alternative Motion to Expand the Record. *Id.*

Petitioner replies that "[t]he State's response is largely dedicated to arguing irrelevant points, such as proving actual innocence and expanding the record absent proof of a new *Brady* claim." Docket No. 69, p. 1 (citing Docket No. 68, pp. 2-5). Petitioner contends that "the only issue presently relevant to these motions is the question of materiality under *Brady*." *Id.* According to Petitioner, the "defense would have been bolstered by Minton's statement" through

6

its value to impeach the Vogels because "[a]ccording to Minton, his own role was minor while in contrast the Vogels's role was major since they were in charge of making the drug." *Id.* at 2. Based on these circumstances, Petitioner requests the Court to "set the case for an evidentiary hearing." *Id.*

When Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA), it restricted the federal courts' "discretion to hold an evidentiary hearing" in habeas proceedings. *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002). Accordingly, "[a] petitioner who 'fails to develop the factual basis of a claim in State court proceedings' is not entitled to a federal evidentiary hearing unless he meets certain stringent requirements." *Id.* (quoting 28 U.S.C. § 2254(e)(2)). 28 U.S.C. § 2254 sets those stringent requirements, stating:

> [e](2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> > (A) the claim relies on--
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.§ 2254(e)(2).

A petitioner has failed to develop the factual basis of a claim in State court when "'the prisoner was [not] diligent in his efforts'" to find evidence, regardless of "'whether the facts could have been discovered.'" *Hutchison v. Bell*, 303 F.3d 720, 729 (6th Cir. 2002) (quoting *Williams v. Taylor*, 529 U.S. 420, 435 (2000)). The question of whether a petitioner has met this diligence

7

requirement depends on if he "'made a reasonable attempt, in light of the information at the time, to investigate and pursue claims in state court.'" *Id.* (quoting *Williams*, 529 U.S. at 435). If the diligence standard is not met, a petitioner then must make a showing under the "strict requirements of subparts (A) and (B)." *Id.* (citing 28 U.S.C. § 2254(e)(2)).

The rule established in *Brady v. Maryland* requires that "the prosecution must disclose all material, exculpatory evidence to a defendant, irrespective of whether the failure to disclose was done in good or bad faith." *Jells v. Mitchell*, 538 F.3d 478, 501 (6th Cir. 2008) (citing *Brady*, 373 U.S. 83). The type of favorable evidence required to be disclosed under *Brady* includes impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). To prove a *Brady* violation occurred, a petitioner must show "'(1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice.'" *Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010) (quoting *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008)).

Proving that prejudice occurred as a result of the state's action requires showing that the evidence was material to a petitioner's "conviction when viewed in light of the other evidence presented at trial." *Robinson*, 592 F.3d at 735. As the Supreme Court explained in *Giglio v. United States*:

> When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule. We do not, however, automatically require a new trial whenever a combing of the prosecutors files [*sic*] after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. A finding of materiality of the evidence is required under Brady.

*Giglio v. United States*, 405 U.S. 150, 154 (1972) (Internal quotations and citations omitted). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S.

8

at 682. A "'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).

As an initial matter, neither party has expressly briefed the issue of whether Petitioner's motions fall under the requirements of 28 U.S.C. § 2254(e)(2) or the undersigned's discretion to grant the motions pursuant to the general requirements of *Brady*. Identifying which of the two controls the analysis would ordinarily be critical, considering the limits on the Court's discretion in granting evidentiary hearings under AEDPA. Nevertheless, the undersigned finds that Petitioner's motions should be denied under either analysis.

In the present case, Petitioner has not demonstrated that the State's withholding of Mr. Minton's statement had a prejudicial effect on his conviction. As a whole, Mr. Minton's statement placed Petitioner at the Vogels' apartment where methamphetamine was being produced; it neither directly inculpated nor exculpated Petitioner in the methamphetamine production. *See* Docket No. 57-1, pp. 1-2. Although the statement did allege that Mrs. Connie Vogel occupied a bedroom with her husband and Petitioner for a period of about forty-five minutes, Mr. Minton said that he was "not sure what they were doing." *Id.* at 1. The impact Mr. Minton's statement could have had on Petitioner's conviction under these circumstances is speculative. The speculative nature of this evidence is further revealed by Mr. Vogel's testimony that Petitioner was involved in the manufacture of methamphetamine, testimony that was unlikely to have been impeached by Mr. Minton's written statement. Additionally, Mr. Minton apparently would have testified at trial that Petitioner "was involved in the making" of methamphetamine. Docket No. 57, p. 8. Mr. Minton's written statement does not, on its face, directly conflict with his own statement regarding what he would have testified to at trial. Instead of creating a "reasonable probability" that "the result of the

9

proceeding would have been different (*Bagely*, 473 U.S. at 682), the State's failure to disclose Mr. Minton's statement only deprived Petitioner of "evidence possibly useful to the defense but not likely to have changed the verdict." *Giglio*, 405 U.S. at 154. Thus, because Petitioner has failed to demonstrate Mr. Minton's statement was material to his defense, he has not shown sufficient grounds for relief entitling him to an evidentiary hearing. *See Sawyer*, 299 F.3d at 610.

For similar reasons, Petitioner cannot show that he meets the requirements of 28 U.S.C.§ 2254(e)(2)(B). Under Section 2254(e)(2)(B), a petitioner must show "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the offense." § 2254(e)(2)(B). As explained above, the effect Mr. Minton's statement would have had on Petitioner's conviction is speculative. Had Mr. Minton's statement been provided to Petitioner through discovery in state court, a reasonable factfinder could have still found Petitioner guilty based on the evidence already existing in the Record. Accordingly, Petitioner cannot show by clear and convincing evidence that no reasonable factfinder would have found him guilty but for the State's withholding of Mr. Minton's statement.

Because Petitioner has not shown that he is entitled to an evidentiary hearing pursuant to a *Brady* violation or by complying with the requirements of Section 2254(e)(2), the undersigned denies his Motion for Evidentiary Hearing.

Petitioner has alternatively requested the Court allow him to expand the record to include Mr. Minton's statement. Rule 7 of the Rules Governing Section 2254 explains when a court may allow a party to expand the record. Rule 7 states the following:

> (a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

(b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

(c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

SECT 2254 Rule 7. In regard to expanding the record pursuant to Rule 7, the Sixth Circuit Court of Appeals has stated that "'when expansion of the record is used to achieve the same end as an evidentiary hearing, the petitioner ought to be subject to the same constraints that would be imposed if he had sought an evidentiary hearing.'" *Samatar v. Clarridge*, 225 F. App'x 366, 375 (6th Cir. 2007) (quoting *Owens v. Frank*, 394 F.3d 490, 499 (7th Cir. 2005). This rule has been followed in several cases within the Middle District of Tennessee. *See e.g. Hollis v. Perry*, No. 3:17-CV-00626, 2018 WL 3572391, at *3 (M.D. Tenn. July 24, 2018) ("[T]he petitioner must also satisfy the statutory prerequisites articulated in Section 2254(e)(2) to expand the record); *see also Guerrero v. Ford*, No. 1:17-CV-00103, 2018 WL 4701596, at *2 (M.D. Tenn. Oct. 1, 2018); *Flores v. Holloway*, No. 3:17-CV-00246, 2018 WL 573121, at *2 (M.D. Tenn. Jan. 26, 2018).

As discussed above, Petitioner has not made a showing of materiality under *Brady* nor has he shown that he satisfies the prerequisites of Section 2254(e)(2). Although Rule 7 does not expressly require a petitioner to comport to the requirements of Section 2254(e)(2) when requesting the record be expanded, the undersigned finds the above case law on this point persuasive. Thus, because Petitioner is not entitled to an evidentiary hearing on his *Brady* claim, the undersigned also finds that Petitioner's Motion to Expand the Record should be denied.

    B.    **Petitioner's Motion for Leave to File Second Amended Petition**

Petitioner also requests that the Court allow him to file a second amended petition so that he can pursue his *Brady* claim based on the facts alleged above in support of his Motions for an

Evidentiary Hearing and to Expand the Record. Docket No. 59, p. 1.

Respondent argues that "Petitioner's motion for leave to file a second amended petition to raise his newly-alleged *Brady* claim must be denied." Docket No. 68, page 5. In support of his argument, Respondent asserts that "Petitioner's *Brady* claim lacks materiality" because Mr. Minton's statement "inculpated Petitioner and because counsel knew . . . that Minton would testify to Petitioner's manufacturing methamphetamine if called to testify at trial. *Id.* at 6 (citing Docket No. 37-16, p. 20; Docket No. 37-15, p. 66-67; Docket No. 57, p. 8). Additionally, Respondent states that "Minton's statement constitutes 'cumulative' impeachment evidence considering trial counsel's thorough cross-examination of the Vogels' testimonies." *Id.* (quoting *Jalowiec v. Bradshaw*, 657 F.3d 293, 313 (6th Cir. 2011)). Respondent further states that "[i]mmaterialilty is also shown through other evidence in the record" such as "Connie Vogel's testimony that Petitioner attempted to intervene in the State's case against him, saying that 'if Vogel testified for Petitioner, he would testify for Vogel in trial'" (*Id.* at 7 quoting Docket No. 37-4, p. 130) and "Investigator Marc Martin's testimony . . . that he observed Minton and Petitioner leaving the Vogels' apartment before going to the apartment himself." *Id.* (quoting Docket No. 37-4, p. 43). Respondent concludes that such evidence "demonstrates that Minton's statement would not have resulted in a 'reasonable probability that the result of the proceeding would have been different.'" *Id.* at 7 (quoting *Robinson*, 592 F.3d at 735).

As discussed above, Petitioner argues in his reply that Mr. Minton's statement was material to his conviction because it could have been used to attack the Vogels' credibility. Docket No. 69, pp. 1-2.

A party who has exhausted the ability to amend as a matter of course, "may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) Fed.

R. Civ. P. "The court should freely give leave when justice so requires." *Id.* The Court has the discretion to grant or deny a petitioner's motion to amend the pleadings and should consider the following elements: "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).

Having denied Petitioner's Motion for Evidentiary Hearing and his alternative Motion to Expand the Record, the undersigned finds that allowing Petitioner to amend his Petition to include the *Brady* claim would be futile. *See Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998). Absent evidence in the record to support Petitioner's *Brady* claim, his claim on that ground would have no support. Thus, Petitioner's Motion for Leave to File Second Amended Petition is denied.

### III. CONCLUSION

For the reasons discussed above, (1) Petitioner's Motion for Evidentiary Hearing or, in the Alternative, Motion to Expand the Record (Docket No. 57) and (2) Petitioner's Motion for Leave to File Second Amended Petition (Docket No. 59) each are DENIED.

**IT IS SO ORDERED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**