**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ERNEST WILLARD DODD, SR.** | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 3:11-cv-1090** |
| **v.** | ) | **Judge Richarson / Frensley** |
| | ) | |
| **CHERRY LINDAMOOD, Warden,** | ) | |
| **Respondent.** | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner Ernest Willard Dodd, Sr., an inmate incarcerated in the Tennessee Department of Corrections, has filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. By order entered March 16, 2017 (Docket No. 28), this petition was referred to the Magistrate Judge for further proceedings under Rule 8(b) of the Rules Governing Section 2254 Cases and 28 U.S.C. § 636(b)(1)(B).

Presently pending before the court is Petitioner's Amended Petition for Writ of Habeas Corpus. Docket No. 23. Respondent has filed an answer, arguing that the amended petition pleads no entitlement to the writ. Docket No. 38. Petitioner has filed a reply. Docket No. 43. The Petitioner filed a Motion for Evidentiary Hearing or, in the Alternative, Motion to Expand the Record (Docket No. 57) and Motion for Leave to File a Second Amended Petition (Docket No. 59). Following briefing on the motions, the Court denied the requested relief. Docket No. 72. With permission of the Court, Petitioner filed a further Reply to the State's Answer to the Amended Petition for Writ of Habeas Corpus. Docket No. 76.

For the reasons set forth below, the undersigned recommends that Petitioner's amended petition for habeas relief be **DENIED** and **DISMISSED WITH PREJUDICE**. The undersigned recommends that a certificate of appealability be **DENIED** as to all claims.

Pursuant to Rule 8(a) of the Rules Governing Section 2254 Cases, the undersigned further recommends that the Petitioner's request for an evidentiary hearing be **DENIED** as to all claims. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Ata v. Scutt*; 662 F.3d 736, 742 (6th Cir. 2011) (same); *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) ("[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing.") (internal quotation marks omitted), *quoting Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002).

## I.   BACKGROUND

The Tennessee Court of Criminal Appeals summarized the evidence presented at trial as follows:

> In July of 2010, the Warren County Sheriff's Office was running surveillance on the apartment of Lance and Connie Vogel. Mrs. Vogel had been used by the police before as an informant for information about different people and crimes on the street level. During the surveillance, Marc Martin, an investigator, saw Ronnie Minton and Appellant leaving the Vogel's apartment. As Appellant left, Detective Tony Jenkins who was assisting in the surveillance of the apartment went to the door of the apartment and immediately smelled a strong odor of methamphetamine and air freshener. Investigator Martin spoke with Appellant, whom he had known for quite some time. Investigator Martin described Appellant as "enraged."

> Appellant consented to a search of his person. There was nothing on his person. Appellant gave a statement to police in which he explained that the police did not find anything on his person because he saw police coming and ate a bag of methamphetamine. Police found several cut straws and a Coleman can in the truck in which Appellant was riding. The truck belonged to co-defendant Minton. Investigator Martin testified that the items by themselves were not "anything" but that people often snorted methamphetamine through cut straws.

> Appellant gave a statement in which he admitted to smoking methamphetamine and eating a bag of methamphetamine. He denied manufacturing methamphetamine. Appellant admitted that he spent the night at the Vogel's

2

apartment and went to the store with codefendant Minton to look for lithium batteries. Appellant stated that he would have smelled the methamphetamine if it were cooking while he was in the apartment.

A search warrant was obtained for the Vogel apartment where officers seized a large number of known precursors to the manufacture of methamphetamine. As a result, Appellant, Mr. and Mrs. Vogel, and Mr. Minton were indicted by the Warren County Grand Jury for one count of initiating a process intended to result in the manufacture of methamphetamine and one count of promoting the manufacture of methamphetamine.

At trial, Mrs. Vogel testified that Appellant smoked methamphetamine on aluminum foil at the apartment. Mrs. Vogel personally observed Appellant with scales, filters, lye, cold packs, and pills on the floor of the apartment. Mrs. Vogel testified that Appellant placed a filter on the scales and poured out the lye. She claimed that she took her medicine and went to bed while the men cooked the methamphetamine.

Mr. Vogel testified that he pled guilty to the charges he received in this case and got a total effective sentence of forty years. He admitted that he cooked methamphetamine and confirmed that Appellant was at his apartment on the night in question. According to Mr. Vogel, the three men cooked and consumed methamphetamine that night at the apartment. Appellant participated by weighing "some stuff out" and using the container of lye. Appellant also cut open the cold packs to access the ammonium nitrate. He poured this substance in a bag. Appellant also "had a jug fixed up with a hose coming out of it and was going to gas off what he had poured off of a shake jug" while Mr. Vogel dropped aluminum foil balls into the muriatic acid to cause the reaction. Mr. Vogel admitted that he sprayed air freshener and turned on the exhaust fan in order to try to cover up the smell. Appellant's thirteen-year-old son, Dakota Bennett, testified for the defense. Mr. Bennett testified that he overhead a conversation between Mrs. Vogel and Appellant in which she stated that Appellant had nothing to do with cooking methamphetamine in this case.

Devin Carter, a close friend of Appellant, stopped by the Vogel's apartment on the night of July 15, 2012. He got "into it" with Mr. Vogel. At one point, Mr. Vogel pulled out a knife and stabbed the television. Mr. Carter did not see any evidence of methamphetamine cooking but admitted that he was only at the apartment for about ten minutes.

At the conclusion of the proof, the jury found Appellant guilty of initiating a process to manufacture methamphetamine and attempt to promote the manufacture of methamphetamine.

Docket No. 37-11 at 1-2.

## II.    PROCEDURAL HISTORY

On July 7, 2011, Petitioner was convicted of one count of initiation of a process intended to result in the manufacture of methamphetamine, and one count of attempt to promote the manufacture of methamphetamine, for which he was sentenced to nineteen years imprisonment. Docket No. 37-2 at 27-28. Petitioner filed an appeal of right in the Tennessee Court of Criminal Appeals (Docket No. 37-9), as well as a motion for a new trial (Docket No. 37-2 at 24-25). After an evidentiary hearing was held, the trial court denied Petitioner's motion for a new trial. Docket No. 37-8 at 10. In his appeal of right, Petitioner raised the following claims:

> 1.      The trial court erred in setting the effective sentence of the Appellant at nineteen (19) years in the Tennessee Department of Corrections, as it was excessive and should not have been increased based on the proven enhancing factors and the mitigating factors.
>
> 2.      There is insufficient evidence to support a verdict on all convictions, which were initiation of the process intended to result in the manufacture of methamphetamine and attempted promotion of methamphetamine.
>
> 3.      The trial court erred in failing to grant the Appellant's motion *in limine* to exclude certain photographs.
>
> 4.      The Appellant was denied his constitutional right to a fair trial by the combination of all the errors in the record.

Docket No. 37-9 at 20-37.

The Tennessee Court of Criminal Appeals affirmed. Docket No. 37-11 at 1. The Tennessee Supreme Court denied permission to appeal. Docket No. 37-23 at 1.

Petitioner subsequently filed a *pro se* petition for post-conviction relief on March 6, 2014. Docket No. 37-15 at 4-12. Petitioner was appointed counsel, and an amended petition for post-conviction relief was filed. *Id.* at 22, 25-29. The post-conviction court held an evidentiary hearing, and denied relief. *Id.* at 66-67. Petitioner filed a post-conviction appeal of right in the Tennessee Court of Criminal Appeals. Docket No. 37-15 at 75-76. In his post-conviction appeal of right,

4

Petitioner raised the following claims:

> 1. The post-conviction court made an erroneous conclusion of law in ruling that Appellant's criminal history would be admissible to impeach him if he were to testify. Therefore, trial counsel was ineffective in advising the Appellant not to testify absent evidence that the State filed a notice of intent and absent the trial court's ruling on that issue.

> 2. The post-conviction court did not make the proper assessment in determining whether Ronnie Minton was a material witness.

Docket No. 37-17 at 10-12.

The Tennessee Court of Criminal Appeals affirmed. Docket No. 37-20 at 1. The Tennessee Supreme Court denied permission to appeal. Docket No. 37-23 at 1. Petitioner initially brought this habeas petition *pro se* on September 8, 2011. Docket No. 1. The Federal Public Defender was subsequently appointed as counsel on May 17, 2012. Docket No. 16. On July 11, 2012, this court granted Petitioner's motion to stay and abey his habeas corpus proceedings due to matters pending in state court, subject to reopening by the motion of any party. Docket No. 22. On May 10, 2017, Petitioner, through counsel, filed a motion to reopen his habeas corpus proceedings (Docket No. 24) and an amended petition seeking habeas corpus relief (Docket No. 23).

### III. ISSUES PRESENTED FOR REVIEW

In the instant amended petition, Petitioner raises thirteen separate claims for relief:

> 1. In violation of the Sixth and Fourteenth Amendment guarantees of due process, equal protection, and the right to a jury drawn from a fair-cross-section of the community, there was discrimination against women, AfricanAmericans, and Hispanics in the selection of the Warren County grand jury foreperson.

> 2. In violation of the Sixth and Fourteenth Amendments, including due process and equal protection, the prosecution used peremptory strikes to remove minority and/or female jurors in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), including but not limited to juror Victor Guerard, an African-American male who was struck peremptorily by the prosecution.

> 3. In violation of the Fifth and Fourteenth Amendments, the trial court allowed separate convictions for initiating a process intended to manufacture

5

methamphetamine under Tenn. Code Ann. § 39-17-435(a) and an attempt to promote the manufacture of methamphetamine under Tenn. Code Ann. § 39-17-433(a)(1), because the latter offense is subsumed by the former and a lesser included offense, including under the circumstances here, and/or the Tennessee General Assembly did not intend double punishments for the conduct charged here in the different counts of the indictment.

4. In violation of due process under the Fourteenth Amendment, the prosecution presented false and misleading testimony from Connie Vogel, and withheld exculpatory evidence demonstrating that Connie Vogel was not credible and/or that her testimony was not true when she testified that she had not been promised anything for her testimony against Petitioner and had not been made any offers to lessen what might happen with the disposition of her pending charges arising from this same indictment, on which she was a co-defendant.

5. In violation of due process under the Fourteenth Amendment, the prosecution engaged in improper and unconstitutional closing argument.

6. In violation of the Sixth and Fourteenth Amendments, the jury was instructed that reasonable doubt simply required "moral certainty of guilt" and/or an inability to let the mind "rest easily" about guilt.

7. In violation of the Sixth and Fourteenth Amendments, the jury was given instructions on "knowingly" and "intentionally" that violated due process and relieved the prosecution of proving all elements of the two offenses beyond a reasonable doubt.

8. In violation of the Sixth and Fourteenth Amendments, the jury was instructed that "the law presumes that all witnesses are truthful," and that witnesses making discrepant statements should not be considered to lack credibility "unless it should plainly appear that some witness has willfully testified falsely."

9. In violation of the Sixth and Fourteenth Amendments, jury instructions on corroboration of co-defendants' statements also misled jurors and allowed conviction of the offenses without proof beyond a reasonable doubt, where such instructions misled jurors into thinking they could convict merely if there was an inference that Petitioner was "implicated in the crime," and allowed acquittal only if there was not "any evidence to corroborate the statements of any co-defendants."

10. In violation of due process under the Fourteenth Amendment, there was insufficient evidence to support Petitioner's convictions for initiating a process intended to manufacture methamphetamine and attempting to promote the manufacture of methamphetamine, especially where the prosecution did not prove beyond a reasonable doubt that Petitioner was even at the Vogels' apartment during the purported time frame when the alleged acts took place.

6

11.     In violation of the Sixth and Fourteenth Amendments, Petitioner was denied the effective assistance of counsel at trial and at the motion for new trial, because counsel performed deficiently, and there is a reasonable probability that had counsel performed effectively, Petitioner would not have been convicted on Counts 1 and 2 of the indictment, and/or received the 19-year sentence he received.[1]

12.     In violation of the Sixth and Fourteenth Amendments, Petitioner was denied the effective assistance of counsel on direct appeal, because appellate counsel performed deficiently, and there is a reasonable probability that had counsel performed effectively, Petitioner would have secured relief on direct appeal and/or a new trial or sentencing.[2]

---

[1] As is summarized below, claim 11 of Petitioner's amended petition asserts trial counsel was ineffective for the following reasons: (A) failing to challenge the composition and selection of the Warren County Grand Jury; (B) failing to object to the striking of prospective juror Victor Guerard; (C) failing to object to Petitioner's dual convictions on state and federal double jeopardy grounds; (D) failing to move for a mistrial after the prosecution [*sic*] stated his personal opinion that he did not believe the testimony of Dakota Bennett; (E) failing to object to jury instructions on reasonable doubt; (F) failing to object to jury instructions defining "knowingly" and "intentionally"; (G) failing to object to jury instructions that allowed jurors to overlook discrepancies only if a witness was shown to willfully testify falsely; (H) failing to object to jury instructions regarding corroboration of co-defendants' statements that mislead the jury into thinking that Petitioner could be convicted merely if implicated in the offenses; (I) failing to interview Mike Slatton before trial and failing to call Mr. Slatton to testify on Petitioner's behalf; (J) failing to conduct a pretrial interview of Connie and Lance Vogel and failing to adequately cross-examine Mrs. and Mr. Vogel; (K) failing to investigate before trial the status of Mrs. Vogel's arrangements with the prosecution for resolving her case and failing to let Petitioner know before trial that Mrs. Vogel was testifying; (L) failing to investigate the validity of, and inadmissibility of, Petitioner's prior convictions; (M) failing to conduct a pretrial interview of, and call as a necessary witness, Ronnie Minton, as well as failing to move to suppress evidence obtained from a search of Mr. Minton's residence; (N) failing to raise any or all claims raised in this amended petition which are alleged not to have been properly presented and exhausted in state courts.

*See* Docket No. 23 at 10-13.

[2] As is summarized below, claim 12 of Petitioner's amended petition asserts counsel ondirect appeal was ineffective for the following reasons: (A) failing to consider a challenge to the composition and selection of the Warren County Grand Jury; (B) failing to have *voir dire* transcribed and made part of the appellate record; (C) failing to challenge Petitioner's dual convictions on double jeopardy grounds; (D) failing to allege on direct appeal that Connie Vogel received consideration for her testimony and did not testify truthfully; (E) failing to allege error arising from the prosecution [*sic*] stating his personal opinion that he did not believe the testimony of Dakota Bennett; (F) failing to challenge jury instructions defining reasonable doubt; (G) failing

13.     In violation of the Fourteenth Amendment, the cumulative effect of the errors at Petitioner's trial and direct appeal deprived Petitioner of due process and a fundamentally fair trial.

Docket No. 23 at 3-15 (internal citations omitted). In addition, Petitioner contends that the standard of review governing his habeas petition, 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act, is unconstitutional. *Id.* at 1, 15.

Respondent answers that, as a preliminary matter, only claims 10, 11L, 11M (in part)[3], and 13 (in part)[4] have been properly exhausted. Docket No. 38 at 10-21. Respondent argues claims 1-9, 11A-K, 11M (in part), 11N, 12, and 13 (in part) were not properly presented to the Tennessee state courts, and are thus barred from habeas review due to procedural default. *Id.* at 22.

Respondent maintains that as to Petitioner's properly exhausted claims for relief, no claim, either individually or collectively, is sufficient to demonstrate entitlement to the writ. *Id.* at 10-21. Respondent further maintains that as to Petitioner's procedurally defaulted claims for relief,

_____

to challenge jury instructions defining "knowingly" and "intentionally"; (H) failing to challenge jury instructions that allowed jurors to overlook discrepancies only if a witness was shown to willfully testify falsely; (I) failing to challenge jury instructions that mislead the jury into thinking that Petitioner could be convicted merely if implicated in the offenses; (J) failing to raise any or all claims raised in this amended petition which are alleged not to have been properly presented and exhausted in state courts (including in the post-conviction trial court).

*See* Docket No. 23 at 13-15.

[3] Claim 11M of Petitioner's amended petition asserts that trial counsel was ineffective fortwo separate reasons: (1) failing to conduct a pretrial interview of, and call as a necessary witness, Ronnie Minton; and (2) failing to move to suppress evidence obtained from a search of Minton's residence. Docket No. 23 at 12. Respondent contends that argument (1) has been properly exhausted, but that argument (2) is procedurally defaulted. Docket. No. 38 at 15, 43.

[4] Claim 13 of Petitioner's amended petition asserts as grounds for relief the cumulative effect of the errors from each of the preceding claims. Docket No. 23 at 15. Respondent argues that Petitioner procedurally defaulted his cumulative error claim with regard to claims 11 and 12, such that the court should not address those claims in assessing this argument. Docket No. 38 at 21.

8

Petitioner has failed to show any external cause or actual prejudice sufficient to excuse their procedural default. *Id.* at 22. Additionally, Respondent submits that the Antiterrorism and Effective Death Penalty Act is constitutional, and that Petitioner has cited no authority to the contrary. *Id.* at 2 n.1.

In his reply, Petitioner maintains he is entitled to relief on each of his claims. Docket No. 43. Petitioner asserts he 'was under no obligation to anticipatorily rebut the affirmative defense of default which Respondent has now raised in his answer." *Id.* at 3. Petitioner argues that "*Martinez* applies to Petitioner's defaulted ineffectiveness claims, and, following discovery and an evidentiary hearing, he will overcome those defaults [and the default of claims 1-9] under the *Martinez* test and establish his entitlement to habeas corpus relief." *Id.* at 6. Petitioner contends that while "his *Brady* claim [claim 4] was not presented in state court and would otherwise be procedurally defaulted," he will, following discovery, be able to prove the ultimate merit of his *Brady* claim, thus satisfying "'cause and prejudice' that overcomes the default and entitles [him] to relief on the merits." *Id.* at 7. Petitioner submits that his cumulative error argument in claim 13 is cognizable on habeas review, and that the various claims underlying this argument provide a sufficient basis for habeas relief. *Id.*

Petitioner's supplemental reply provides further briefing on two of his sub claims of ineffective assistance of counsel. Docket No. 76. First, as to claim 11D, Petitioner contends that counsel was ineffective in failing to challenge the prosecutor's improper statements during his closing argument. *Id.* Petitioner contends his trial attorney was ineffective is failing to object to the prosecutor's second incidence of misconduct during closing statements. *Id.* at p. 4. After initially objecting to the prosecutor's statement to the jury about his opinion on the credibility of witness Dakota Bennett which resulted in the Court giving a curative instruction, counsel failed to

9

object when the prosecutor reiterated the statement of his belief regarding the witness' testimony which was made immediately after the curative instruction. *Id.* at pp. 2-3.

Petitioner's supplemental reply further argues that as to claim 11A counsel was ineffective for failing to challenge the appointment of the grand jury foreperson. *Id.* at p. 4. Petitioner asserts that his attorney's failure to challenge the indictment under *Rose v. Mitchell*, 443 U. S. 545 (1979) was grounded in no strategic reasons and had he raised the claim could have gotten the indictment dismissed therefore his performance was both deficient and prejudicial. *Id.* at p. 5.

## IV.     ANALYSIS

### A.     Standard of Review

Because Petitioner filed his application for habeas relief after April 24, 1996, his amended petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 214 (1996). The AEDPA amended the standard for granting habeas relief as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1)     resulted in a decision that was contrary to, or involved anunreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonabledetermination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses have independent meaning. *Williams v. Taylor*, 529 U. S. 362, 404 (2000). With regard to the former, a state court's decision is "contrary to" clearly established law if it " 'applies a rule that contradicts the governing law set

forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.' " *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), *quoting Williams*, 529 U.S. at 405-06. As to the latter, "an *unreasonable application* of federal law is different from an *incorrect application* of federal law." *Williams*, 529 U. S. at 410 (emphasis added). A federal habeas court making an " 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively unreasonable*." *Id.* at 409 (emphasis added). The phrase "clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta" of Supreme Court decisions at the time of the relevant state court decision. *Id.* at 412.

To obtain habeas relief from a federal court, a habeas petitioner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U. S. 86, 103 (2011). Where state courts have made factual determinations regarding issues presented for federal habeas corpus review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U. S. C. § 2254(e)(1). Under the AEDPA, the purpose of habeas review is to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U. S. 685, 693 (2002).

### 1.    Constitutionality of AEDPA Standard

Notwithstanding the above standard of review, Petitioner asserts that he is entitled to "*de novo* review of all claims because the Antiterrorism and Effective Death Penalty Act is

unconstitutional." Docket No. 23 at 1. Petitioner provides no facts and makes no legal argument to support this claim. This claim is thus conclusory and subject to dismissal. Even if Petitioner had stated a viable legal argument, courts have widely concluded that § 2254(d) is constitutional. *See, e.g.*, *Tucker v. Johnson*, 242 F. 3d 617, 620 (5th Cir. 2001) (upholding the AEDPA against an Article III challenge); *Hughes v. Johnson*, 191 F. 3d 607, 612 (5th Cir. 1999) (upholding the AEDPA against both an Article III and a Supremacy Clause challenge). *See also Jones v. Quarterman*, No. H-08-3212, 2009 WL 5216873, at *7 (S. D. Tex. Dec. 29, 2009) (holding that the AEDPA does not violate the Supremacy Clause, separation of powers doctrine, Article III case or controversy requirement, Due Process Clause, or Suspension Clause)*; Byrd v. Trombley*, 580 F. Supp. 2d 542, 551 (E.D. Mich. 2008) (same), *aff'd* 352 Fed. Appx. 6 (6th Cir. 2009). Accordingly, Petitioner's constitutional challenge to the AEDPA is without merit, and the standard of review under 28 U.S.C. § 2254(d) governs this petition.

### B.    Petitioner's Procedurally Defaulted Claims

Before a federal court may review a claim raised in a habeas petition, it must be determined whether the petitioner has exhausted the remedies available in state court. 28 U.S.C. § 2254(b)(1). A federal court shall not grant an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a state court unless the applicant has exhausted the remedies available in courts of the state, the applicant has no state corrective process, or the process is ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1)(A)-(B).

To properly exhaust available state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U. S. 838, 845 (1999).

In the State of Tennessee, a petitioner need not file an application for permission to appeal

12

to the Tennessee Supreme Court to exhaust all state remedies; an appeal to the Tennessee Court of Criminal Appeals is sufficient. Tenn. Sup. Ct. R. 39; *Adams v. Holland*, 330 F. 3d 398, 402 (2003) (holding that Rule 39 removes Tennessee Supreme Court review as an antecedent for federal habeas review). Further, in order to properly exhaust a habeas claim in state court, "a petitioner must assert both the legal and factual basis for his or her claim." *Williams*, 460 F. 3d at 806. To satisfy this requirement, and avoid a procedural default, a petitioner's federal habeas claim must be based on the same theory presented in state court and cannot be based on a wholly separate or distinct theory. *Carter v. Mitchell*, 829 F. 3d 455, 461 (6th Cir. 2016); *Wong v. Money*, 142 F. 3d 313, 322 (6th Cir. 1998).

The procedural default doctrine provides that if a petitioner fails to satisfy independent and adequate state procedural requirements, he forfeits his right to present his claims on federal habeas review. *Coleman v. Thompson*, 501 U. S. 722, 732 (1991). A procedural default can occur in one of two ways. First, a procedural default may occur if the state court actually "relied on the procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U. S. 320, 327 (1985). Second, if a petitioner fails to properly exhaust a claim in state court, and the claim can no longer be raised in state proceedings because of a failure to follow state procedure for presenting such a claim, the claim is technically exhausted, but a petitioner is not automatically entitled to present his claim on federal habeas review, as his claim is procedurally defaulted. *Woodford v. Ngo*, 548 U. S. 81, 126 (2006).

In those cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of any such claim is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims

will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750. Whether a petitioner has established cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U. S. 478, 488 (1986). To establish actual prejudice, a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U. S. 152, 170 (1982) (emphasis original). With regard to a fundamental miscarriage of justice, a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin v. Perkins*, 569 U. S. 383, 399 (2013) (internal quotation marks omitted), *quoting Schlup v. Delo*, 513 U. S. 298, 327 (1995). For a petitioner to "pass through the gateway" and be permitted to argue the merits of his defaulted claims, he must show "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (internal quotation marks omitted), *quoting Schlup*, 513 U.S. at 316.

1.      **Claims 1-9, 11A-K, 11M (in part), 11N, 12, and 13 (in part) are Procedurally Defaulted**

Petitioner failed to raise claims 1-9, 11A-K, 11M (in part), 11N, 12, and 13 (in part) before the Tennessee Court of Criminal Appeals, and Tennessee law now bars proper exhaustion in the state courts. Under Tennessee law, these claims would be barred as untimely pursuant to the one year statute of limitations. Tenn. Code Ann. § 40–30–102(a). Tennessee law also limits a petitioner to filing only one petition for post-conviction relief. Tenn. Code Ann. § 40–30–102(c).

Additionally, the waiver statute, Tenn. Code Ann. § 40–30–106(g), provides that "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it

for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ." Petitioner has therefore procedurally defaulted these claims.

In his amended petition, Petitioner neither acknowledges that these claims have been defaulted, nor argues that the defaults should be excused. *See* Docket No. 23. However, Petitioner contends in his reply that he was under no obligation to anticipatorily rebut the affirmative defense of procedural default, and that he can overcome the default of these claims based on several different theories. Docket No. 43. For the reasons discussed below, Petitioner has failed to demonstrate the cause and actual prejudice or fundamental miscarriage of justice necessary to overcome the procedural default of these claims.

### a.    Anticipatory Pleading to Overcome Procedural Default Affirmative Defense

As a preliminary matter, Petitioner argues that he was under no obligation to anticipatorily rebut the affirmative defense of procedural default. Docket No. 43 at 3-4. Petitioner is correct that procedural default is an affirmative defense, and that the burden is on the government to raise a procedural default issue. *Flood v. Phillips*, 90 Fed. Appx. 108, 114 (6th Cir. 2004) (holding that the government, in order not to waive the defense, "was required to assert procedural default as an affirmative defense in its responsive pleading"). A petitioner is not required to answer the defense until after the government asserts it. *Vanwinkle v. United States*, 645 F. 3d 365, 370 (6th Cir. 2011). Petitioner therefore appropriately first addressed Respondent's assertion of procedural default in his reply.

### b.    Claim 1- Grand Jury Discrimination

Petitioner submits that in the selection of the Warren County grand jury foreman, women, African-Americans, and Hispanics were discriminated against in violation of his Fourteenth Amendment rights to due process and equal protection, as well as his Sixth Amendment right to a

jury drawn from a fair cross-section of the community. Docket No. 23 at 3. To support this claim, Petitioner provides data which allegedly demonstrates that women, African-Americans, and Hispanics were statistically underrepresented as grand jury foreman for the seventeen year period between 1995 and 2011. *Id*. at 3-4.

Petitioner's due process challenge is without merit. In *Hobby v. United States*, the Supreme Court held that "[d]iscrimination in the selection of grand jury foremen—as distinguished from discrimination in the selection of the grand jury itself—does not in any sense threaten the interests of the defendant protected by the Due Process Clause." 468 U.S. 339, 344 (1984). Where the role of the grand jury foreman is "essentially clerical in nature," discrimination in the appointment of the grand jury foreman is not so significant to the administration of justice as to impugn the fundamental fairness of the process itself and undermine the integrity of the indictment. *Id.* at 344, 345. The Tennessee Supreme Court has recognized that "the role of the grand jury foreperson in Tennessee is ministerial and administrative," and thus does not threaten due process. *State v. Bondurant*, 4 S. W. 3d 662, 675 (Tenn. 1999). Petitioner has provided no argument for why this court should question that determination. Petitioner therefore cannot establish actual prejudice to excuse the default of this claim on due process grounds.

Petitioner's equal protection challenge is without merit, as Petitioner lacks standing to bring this challenge. To establish an equal protection violation in the context of grand jury selection, "the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." *Castaneda v. Partida*, 430 U. S. 482, 494 (1977). Petitioner, a Caucasian male (Docket No. 37-1 at 142), lacks standing to challenge the exclusion of women, African-Americans, and Hispanics from the office of grand jury foreman.

16

Petitioner contends that *Rose v. Mitchell* supports his equal protection challenge, but this case is inapposite to the situation presented here. Docket No. 43 at 5. In *Rose*, an AfricanAmerican challenged the exclusion of African-Americans from the grand jury. 443 U.S. 545, 551 (1979). *Rose* did not change the rule set forth in *Castaneda* (*see Rose*, 443 U.S. at 565), and Petitioner cites no authority to suggest that *Rose* would permit his gender discrimination challenge. In total, *Rose* does not support finding a valid equal protection challenge here. Petitioner therefore cannot establish actual prejudice to excuse the procedural default of this claim on equal protection grounds.

With regard to Petitioner's Sixth Amendment challenge, the Sixth Circuit in *Henley v. Bell* explicitly stated that "the Supreme Court has never allowed defendants to challenge the composition of their grand juries based on the Sixth Amendment." 487 F. 3d 379, 387 (6th Cir. 2007). Accordingly, Petitioner cannot show actual prejudice to excuse the procedural default of his fair cross-section claim.

    c.    **Claim 2- *Batson* Challenge**

Petitioner alleges that the prosecution used peremptory strikes to remove minority and/or female jurors in violation of *Batson v. Kentucky*, 476 U. S. 79 (1986). Docket No. 23 at 4. To support this contention, Petitioner asserts that Victor Guerard, an African-American male, was peremptorily struck for improper reasons. *Id.*; Docket No. 43 at 5.

The Equal Protection Clause prohibits a prosecutor from using peremptory challenges to remove an otherwise qualified prospective juror from the petit jury solely on the basis of race. *Batson*, 476 U.S. at 84. *Batson* provides a three-step inquiry to determine whether a peremptory challenge was based on race:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been

made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, 552 U. S. 472, 476-77 (2008) (internal quotation marks omitted), *quoting Miller-El v. Cockrell*, 537 U. S. 322, 328-29 (2003).

To establish a prima facie case, and thus satisfy step one of *Batson*, the party challenging the peremptory strike must demonstrate: "(1) he is a member of a cognizable racial group; (2) a peremptory challenge was employed to remove a juror of the defendant's race; and (3) these facts, along with other relevant circumstances, raise an inference that the proponent of the peremptory challenge used the challenge to exclude a prospective juror because of his or her race." *United States v. McAllister*, 693 F. 3d 572, 579 (6th Cir. 2012). A defendant may also raise a *Batson* violation even if he or she does not belong to the same cognizable racial group as the excluded juror. *Id*. at 579 n. 2, *citing Powers v. Ohio*, 499 U. S. 400, 402 (1991).

Under *Powers*, Petitioner has satisfied the first two elements of the *Batson* prima facie case. 499 U.S. at 402. Petitioner is a Caucasian (Docket No. 37-1 at 142), which makes him a member of a cognizable racial group, and the juror that was allegedly improperly struck is an African-American (Docket No. 23 at 4). Petitioner has not satisfied the third element however, as his allegations do not give rise to an inference that a juror was impermissibly struck on the basis of race. The conclusory allegation that Mr. Guerard was improperly struck is the only evidence Petitioner provides to support this claim, and there is no factual support for this allegation in the record. Petitioner therefore fails the first step of the *Batson* inquiry, and cannot excuse the procedural default of this claim.

Petitioner provides no evidence to support his claim that female jurors were improperly struck, and there is no factual support for this allegation in the record. Accordingly, this argument

is without merit and the procedural default of this claim cannot be excused.

**d. Claim 3- Double Jeopardy**

Petitioner maintains that his conviction for "attempt to promote the manufacture of methamphetamine" is subsumed by his conviction for "initiating a process to manufacture methamphetamine," and that the Tennessee General Assembly did not intend double punishments for the conduct charged. Docket No. 23 at 4-5. Petitioner submits that this is a violation under the "multiple punishments" prohibition of the Double Jeopardy Clause. *Id.* at 5.

The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against *multiple punishments* for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), overruled on other grounds, *Alabama v. Smith,* 490 U. S. 794 (1989)(footnotes omitted)(emphasis added). The test for determining whether two offenses are sufficiently distinguishable so as to permit cumulative punishment was set forth in *Blockburger v. United States* as follows:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. 299, 304 (1932).

Although the *Blockburger* test, a rule for statutory construction of federal statutes, "does not necessarily control the inquiry into the intent of a state legislature," Tennessee interprets its own double jeopardy prohibition in the same manner as the federal double jeopardy prohibition. *Ohio v. Johnson*, 467 U. S. 493, 499 n.8 (1984); *State v. Houston*, 328 S. W. 3d 867, 875 (Tenn. Crim. App. 2010).

The Tennessee Court of Criminal Appeals discussed each offense Petitioner was convicted

of as follows:

> Appellant was convicted of initiating a process to manufacture methamphetamine. Tennessee Code Annotated section 39-17-435 makes it an offense for a person to "knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine." It is not a defense if "the chemical reaction is not complete, that no methamphetamine was actually created, or that the process would not actually create methamphetamine if completed." T.C.A. § 39-17-435(b).

> "Initiates" is defined in the statute as "begin[ing] the extraction of an immediate methamphetamine precursor from a commercial product, . . . begin[ing] the active modification of a commercial product for use in methamphetamine creation, or . . . heat[ing] or combin[ing] any substance or substances that can be used in methamphetamine production." Id. § 39-17-435(c).

> Appellant was also convicted of attempt to promote the manufacture of methamphetamine. A person who [*sic*] promotes methamphetamine manufacture when they: Sell[], purchase[], acquire[], or deliver[] any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use[.] T.C.A. § 39-17-433(a)(1).

Docket No. 37-11 at 7.

The two offenses Petitioner was convicted of are sufficiently distinguishable under *Blockburger* to avoid a Double Jeopardy Clause violation. "Initiating a process to manufacture methamphetamine" requires proof of *beginning* the "extraction" or "active modification" of commercial products, or of the "heating" or "combining" of any substance or substances that can be used to produce methamphetamine. Tenn. Code Ann. § 39-17-435(c). In contrast, "attempt to promote the manufacture of methamphetamine" requires proof of attempting to *facilitate* the methamphetamine manufacture process by "sell[ing], purchas[ing], acquir[ing], or deliver[ing]" any substance(s) or apparatus with knowledge or reckless disregard of its intended use in methamphetamine production. *Id.* § 39-17-433(a)(1). Each offense requires different criminal actions, and thus requires different facts to prove when compared to the other. Because these offenses are sufficiently distinguishable under *Blockburger*, Petitioner has failed to demonstrate

actual prejudice to excuse the procedural default of this claim.

  **e. Claim 4- *Brady* Violation**

  Petitioner argues that the State presented false testimony from Connie Vogel and withheld exculpatory evidence demonstrating that Ms. Vogel was not credible and that she lied about whether she was promised anything by the State in exchange for her testimony. Docket No. 23 at 5. Petitioner contends that the plea deal Ms. Vogel received "confirms that before Connie Vogel testified, she had an expectation of benefits, the prosecution promised to consider her testimony when disposing of her case, and that the prosecution did so." *Id.* at 5-6. To excuse the default of this claim, Petitioner asserts that under *Apanovitch v. Houk*, 466 F. 3d 460, 474 (6th Cir. 2006), proof of the ultimate merit of a *Brady* claim first raised in federal court necessarily establishes cause and actual prejudice to overcome the procedural default. Docket No. 43 at 7.

  "Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In *Strickler v. Greene*, the Supreme Court set out the three elements necessary to establish a *Brady* violation: "[1] [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." 527 U.S. 263, 28182 (1999). A *Brady* violation occurs only if the suppressed evidence is "material," meaning "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A " 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

  The "cause" and "actual prejudice" requirements to excuse procedural default in the habeas

context parallel two of the three elements of a *Brady* claim. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). With regard to the second element (suppression of evidence by the state), "a petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence." *Id.* With regard to the third element (prejudice), "prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes." *Id.* A *Brady* violation thus "implicitly constitutes a *per se* excuse ('cause' and 'prejudice') for procedural default in habeas review." *Apanovitch,* 466 F. 3d at 474, *citing Banks*, 540 U.S. at 691.

To establish a *Brady* violation stemming from the prosecution's use of perjured testimony, a petitioner must show that his conviction was "obtained through use of false evidence, known to be such by representatives of the State," or that "the State, although not soliciting false evidence, allow[ed] it to go uncorrected when it appear[ed]." *Napue v. People of State of Illinois*, 360 U.S. 264, 269 (1959). "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U. S. 97, 103 (1976) (footnotes omitted).

Petitioner cannot show that the prosecution knowingly presented perjured testimony by Ms. Vogel. Ms. Vogel's testimony—that the prosecution had not promised her anything in exchange for her testifying (Docket No. 37-4 at 114)—is uncontradicted by the evidence of record, and Petitioner provides only speculation to the contrary. The mere assertion that Ms. Vogel testified with an expectation of benefit, absent any supporting evidence other than the terms of the plea agreement itself, is insufficient to prove that the prosecution knowingly presented perjured testimony.

For much the same reasons, Petitioner cannot show that the prosecution suppressed exculpatory evidence. Petitioner's bare assertion of an agreement between the prosecution and Ms. Vogel is insufficient to establish that the prosecution withheld evidence of the alleged agreement.

As a result, Petitioner has failed to show cause to excuse the procedural default of this claim because he has provided no evidence to support the alleged suppression of evidence.

Petitioner has failed to show actual prejudice for the same reason, such that the *Brady* materiality standard cannot be satisfied. *See Banks*, 540 U.S. at 691. The procedural default of this claim therefore cannot be excused.

### f.      Claim 5- Improper Closing Argument

Petitioner argues that the prosecutor engaged in an improper closing argument by opining that he did not believe the testimony of Dakota Bennett. Docket No. 23 at 6. Petitioner additionally argues that the prosecutor told the jury that "the prosecution had 'made no promises' to Connie Vogel," and that this was a false statement because Ms. Vogel was promised consideration for her testimony. *Id.* at 6, *citing* Docket No. 37-5 at 72.

Petitioner contends that the italicized portions of the following comments made by the prosecutor during closing argument violated his constitutional rights:

> Ladies and gentlemen, the most difficult witness, at least for the State today, was that little 13 year old boy. He's a child. *Do I believe what he told you? I don't.* I think he's a child.

*Id.* at 76.

> So how did we start off with Mrs. Vogel? Mrs. Vogel is under charge. I am the prosecutor on that case. I have *made no promises*, *no offers of leniency in exchange for her testimony*.

*Id.* at 72.

In determining whether comments made during closing argument denied a petitioner the right to a fair trial, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986), *quoting Donnelly v. DeChristoforo*, 416 U. S. 637, 643 (1974). The standard of review for such a question before a habeas court is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (internal quotation marks omitted). The *Darden* standard "is a very general one" that leaves courts "more leeway . . . in reaching outcomes in case-by-case determinations." *Parker v. Matthews*, 567 U. S. 37, 48 (2012); *see also Yarborough v. Alvarado*, 541 U. S. 652, 664 (2004).

The prosecutor in *Darden* asked the jury to "give [the defendant] death" because "[t]hat's the only way that I know that he is not going to get out on the public." 477 U.S. at 180 n.10. The prosecutor referred to the defendant as an "animal," and stated "I wish that I could see him sitting here with no face, blown away by a shotgun." *Id.* at 180 nn. 11-12. Even though these comments "undoubtedly were improper," the Court still found that "they did not deprive the petitioner of a fair trial" in light of the district court's curative jury instructions, the overall weight of the evidence, and the effectiveness of defense counsel's rebuttal. *Id.* at 180-82.

Petitioner cannot satisfy the *Darden* standard with respect to the prosecutor's comment on Mr. Bennet's testimony. The comment at issue was promptly objected to by defense counsel, and the trial court sustained the objection and instructed the jury that attorneys are not permitted to express their own personal feelings about the case. Docket No. 37-5 at 76. Because this improper comment was immediately addressed and remedied, it cannot be said that it so infected the trial with unfairness as to support a due process violation.

As discussed above, Petitioner has failed to provide any credible evidence to support the existence of a promise between Ms. Vogel and the prosecution. This assertion is without merit, and so Petitioner cannot establish that the prosecutor's comment rendered the trial so unfair as to violate due process. This *Darden* claim accordingly fails.

24

Because the prosecution's comments in closing argument do not rise to the level of a constitutional violation, Petitioner has failed to show actual prejudice to excuse the procedural default of this claim.

g.      **Claim 6- Reasonable Doubt Jury Instructions**

Petitioner contends that, in violation of the Sixth and Fourteenth Amendments, the jury instructions on the meaning of "reasonable doubt" both "individually and cumulatively lessened the prosecution's burden of proving all the elements of the offense beyond a reasonable doubt." Docket No. 23 at 7. Petitioner also contends that these instructions were plain error under State law. *Id.*

Petitioner alleges that the italicized portions of the following jury instructions violated his constitutional rights:

> Reasonable doubt is that doubt created by an investigation of all the proof in the case and an inability after such investigation to *let the mind rest easily as to the certainty of guilt.* Absolute certainty of guilt is not demanded by the law to convict of any criminal charge but *moral certainty is required* and this certainty is required as to every element of proof necessary to constitute or make up the offense.

Docket No. 37-5 at 90-91 (emphasis added).

> Now the verdict that you reach must represent the considered judgment of each juror.
>
> . . .
>
> You can have no prejudice, sympathy, or allow anything but the law and the evidence to have any influence upon your verdict. You must render your verdict with absolute fairness and impartiality *as you think justice and truth dictate.*

*Id.* at 107 (emphasis added).

The Sixth Circuit has previously upheld the constitutionality of "moral certainty of guilt" and "inability to let the mind rest easily about guilt" instructions. *Austin v. Bell*, 126 F. 3d 843, 846 (6th Cir. 1997) (holding that these instructions, given together, do not lower the State's burden of proof). The "as you think justice and truth dictate" instruction has also been held constitutional

25

when it relates "to the verdict representing the considered judgment of each juror." *Morris v. Bell*, No. 07-1084-JDB, 2011 WL 7758570, at *36 (W.D. Tenn. Sept. 29, 2011) (holding that this instruction, when given in this context, "does not give the jury permission to devise its own standard of proof"), *rev'd on other grounds*, *Morris v. Carpenter*, 802 F.3d 825 (6th Cir. 2015). Here, the "as you think justice and truth dictate" instruction was given in context of the "considered judgment of each juror" instruction, and not in relation to the aforementioned "reasonable doubt" instruction. Thus, this instruction did not unconstitutionally lessen the prosecution's burden.

Neither of these instructions constitute plain error under Tennessee law. The Tennessee Supreme Court has held that "moral certainty of guilt" and "inability to let the mind rest easily about guilt" instructions are constitutional. *State v. Nichols*, 877 S. W. 2d 722, 734 (Tenn. 1994) (holding that these instructions, when considered in conjunction, "properly reflect[] the evidentiary certainty required by the 'due process' clause of the federal constitution"). The Tennessee Supreme Court has also held that "as you think justice and truth dictate" instructions are constitutional. *State v. Willis*, 496 S. W. 3d 653, 756 (Tenn. 2016) (holding that this "no sympathy" instruction has been previously upheld), *citing State v. Cribbs*, 967 S. W. 2d 773, 795-96 (Tenn. 1998), and *State v. Bigbee*, 885 S. W. 2d 797, 814 (Tenn. 1994).

Petitioner has therefore failed to establish a constitutional violation or plain error under State law sufficient to find actual prejudice to excuse the procedural default of this claim.

### h.    Claim 7- "Knowingly" and "Intentionally" Jury Instructions

Petitioner asserts that, in violation of the Sixth and Fourteenth Amendments, the jury instructions on the meaning of "knowingly" and "intentionally" both individually and cumulatively "relieved the prosecution of proving all elements of the two offenses beyond a reasonable doubt." Docket No. 23 at 7-8. Petitioner argues that the instruction on the meaning of

"knowingly" allowed "a finding of knowledge of 'conduct' merely from awareness that circumstances existed, not awareness that the conduct was occurring." *Id.* at 7. Petitioner submits that the instruction on the meaning of "intentionally" allowed "a finding of specific intent to cause a result (the manufacture of methamphetamine) from a mere conscious objective to engage in conduct, not cause the result." *Id.* Petitioner also asserts that these jury instructions were plain error under State law. *Id.* at 8.

Petitioner alleges that the italicized portions of the following jury instructions violated his constitutional rights:

> Knowingly means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when *the person is aware of the nature of the conduct or that the circumstances exists* [*sic*]. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. The requirement of knowingly is also established if it is shown that the defendant acted intentionally. Intentionally or intended means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is *the person's conscious objective or desire to engage in the conduct or cause the result*.

Docket No. 37-5 at 93-94 (emphasis added).

> Intended, intending, or intent means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is *the person's conscious objective or desire to engage in the conduct or cause the result*.

*Id.* at 98-99 (emphasis added).

These instructions mirror the Tennessee statutory definitions of these *mentes reae*. Tenn. Code Ann. § 39-11-302.

The Due Process Clause requires the State in criminal prosecutions to prove guilt beyond a reasonable doubt. *In re Winship*, 397 U. S. 358, 368 (1970). When assessing the effect of jury instructions on the validity of a conviction, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*,

27

414 U.S. 141, 146-47 (1973). The determination depends on whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147.

In the case at bar, Petitioner has failed to demonstrate that the prosecution's burden was unconstitutionally lessened. Petitioner cites to no authority indicating that the Tennessee law defining these *mentes reae* in relation to these offenses violates due process. Petitioner's argument on the meaning of "knowingly" is without merit, as Tennessee law provides that awareness of the "nature of the conduct" *or* awareness that the "circumstances exist" is sufficient to establish the requisite *mens rea* for these offenses. Tenn. Code Ann. § 39-11-302. Petitioner's argument on the meaning of "intentionally" is also without merit, as Tennessee law provides that a conscious objective or desire to "engage in the conduct" *or* "cause the result" is sufficient to establish the requisite *mens rea* for these offenses. *Id.* Moreover, when these instructions are evaluated in relation to the jury instructions as a whole, it is apparent that the jury was appropriately instructed on the burden of proving these *mens rea* elements beyond a reasonable doubt.

Neither of these instructions constitute plain error under Tennessee law. To support his claim regarding "knowingly," Petitioner cites *State v. Page*, 81 S. W. 3d 781, 788 (Tenn. Crim. App. 2002), where the court held that a similar "knowingly" instruction lessened the prosecution's burden of proof. To support his claim regarding "intentionally," Petitioner cites *State v. Denton*, No. E2006-02557-CCA-R3-CD, 2008 WL 933200, at *7 (Tenn. Crim. App. Apr. 7, 2008), where the court held that the trial court's inclusion of the phrase "the nature of the conduct" in the definition of "intentionally" was in error.

Both of these cases are inapposite to the jury instructions given here, as *Page* dealt with the "knowingly" instruction for a second-degree murder charge, and *Denton* dealt with the "intentionally" instruction for a first-degree murder charge—both of which are "result-of-conduct"

offenses that require different instructions than the "nature-of-conduct" offenses Petitioner has

been convicted of. *Cf. State v. Faulkner*, 154 S. W. 3d 48, 58 (Tenn. 2005) ("We agree that a

proper instruction defining 'knowingly' or 'intentionally' does not include the nature-of-conduct

and circumstances-surrounding-conduct language because second degree murder and first degree

premeditated murder are result-of-conduct offenses.").

Petitioner has therefore failed to establish a constitutional violation or plain error under

State law sufficient to find actual prejudice to excuse the procedural default of this claim.

### i.      Claim 8- Witness Credibility Jury Instructions

Petitioner submits that, in violation of the Sixth and Fourteenth Amendments, the jury

instructions on witness credibility "individually and cumulatively relived the prosecution of its

burden of proof and [*sic*] proving all elements of the offenses beyond a reasonable doubt." Docket

No. 23 at 8-9. Petitioner claims these instructions "required the jurors to treat questionable

testimony from co-defendants Connie Vogel and Lance Vogel to be true—even if it wasn't

(including testimony about Petitioner's purported actions in the Vogel's apartment, and Connie

Vogel's testimony that she received no promises for her testimony)." *Id.* at 9. Petitioner also

submits that these jury instructions were plain error under State law. *Id.*

Petitioner alleges that the italicized portions of the following jury instructions violated his

constitutional rights:

> You as the jury are the exclusive judges of the credibility of the witnesses
> and the weight to be given to their testimony. If there are conflicts in the testimony
> of the different witnesses, you must reconcile them, if you can, without hastily or
> rashly concluding that any witness has sworn falsely. For *the law presumes that all*
> *witnesses are truthful*.

Docket No. 37-5 at 105 (emphasis added). This instruction is a Tennessee Pattern Jury Instruction.

*See* 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 42.04.

Any witness may be impeached by proving that he or she has made some material statements out of court which are at variance or different with his or her evidence from the witness stand. However, proof of such prior inconsistent statements may be considered by you only for the purpose of testing the witness's credibility and not as substantive evidence of the truth of the matter asserted in such statements. Further a witness may be impeached by a careful cross examination involving the witness in contradictory, unreasonable, and improbable statements. However, immaterial discrepancies or differences in the statements of witnesses do not affect their credibility *unless it should plainly appear that some witness has willfully testified falsely*.

Docket No. 37-5 at 106 (emphasis added). This instruction is a Tennessee pattern jury instruction. *See* 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 42.06.

As stated above, a single jury instruction must be viewed in context of the overall charge when assessing the validity of a conviction. *Cupp*, 414 U.S. at 146-47. The determination depends on whether the single instruction itself, in light of the jury instructions as a whole, "so infected the entire trial that the resulting conviction violates due process." *Id.* at 147. In *Cupp*, the Court upheld a "presumption-of-truthfulness instruction," holding that there was no constitutional violation where the jury was "charged fully and explicitly about the presumption of innocence and the State's duty to prove guilt beyond a reasonable doubt." *Id.* at 148; *see also Lundy v. Campbell*, 888 F. 2d 467, 480-81 (6th Cir. 1989) (rejecting a challenge to a similar presumption-of-truthfulness instruction based on the Court's holding in *Cupp*).

As discussed above, the jury was properly instructed on the reasonable doubt standard. Docket No. 37-5 at 90-91, 107. The jury was also properly instructed on the presumption of innocence as follows:

The law presumes that the defendant is innocent of the charges against him. This presumption remains with the defendant throughout every stage of the trial and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty. The State has the burden of proving the guilt of the defendant beyond a reasonable doubt and this burden does not shift but remains on the State throughout the trial of the case.

30

*Id.* at 90. The jury was thus correctly charged under *Cupp*, and the presumption-of-truthfulness instruction here was not in error.

Neither of these instructions constitute plain error under Tennessee law. Tennessee courts have repeatedly held that where a jury is "fully and explicitly" instructed on the reasonable doubt standard and the presumption of innocence, an instruction that all testifying witnesses are presumed truthful is "constitutionally sound." *State v. Lagrone*, No. E2014-02402-CCA-R3-CD, 2016 WL 5667514, at *29 (Tenn. Crim. App. Sept. 30, 2016) (internal quotation marks omitted), *quoting Lundy v. State*, 752 S.W.2d 98, 103-04 (Tenn. Crim. App. 1987). Tennessee courts have upheld both of these pattern instructions against due process challenges. *See id.* (upholding pattern instruction 42.04); *State v. Thomas*, No. 88-287-III, 1990 WL 29286, at *7 (Tenn. Crim. App. Mar. 21, 1990) (upholding pattern instruction 42.06). Because the jury was properly instructed on the reasonable doubt standard and the presumption of innocence, no plain error occurred.

Petitioner has therefore failed to establish a constitutional violation or plain error under State law sufficient to find actual prejudice to excuse the procedural default of this claim.

**j.    Claim 9- Corroboration Jury Instructions**

Petitioner contends that, in violation of the Sixth and Fourteenth Amendments, the jury instruction on corroboration of co-defendants' statements "misled jurors and allowed conviction of the offenses without proof beyond a reasonable doubt." Docket No. 23 at 9. Petitioner argues that this instruction "misled jurors into thinking that they could convict merely if there was an inference that Petitioner was 'implicated in the crime,' and allowed acquittal only if there was not 'any evidence to corroborate the statements of any co-defendants.' " *Id.*, *citing* Docket No. 37-5 at 101. Petitioner also contends that this instruction was plain error under State law. *Id.*

Petitioner alleges that the italicized portion of the following jury instruction violated his

constitutional rights:

> Now, mere presence. The mere presence in an area where drugs or other components or [*sic*] drug manufacture are discovered or the mere association with a person who is in possession of drugs or components of drug manufacture is not sufficient without further evidence to support a conviction. If you find that the defendant, Ernest Dodd, was merely present in an area where drugs or other components of drug manufacture were discovered with no further evidence, you must find him not guilty. *Uncorroborated statements of co-defendants cannot be used to establish a conviction against the defendant. There must be some fact testified to entirely independent of the co-defendants' testimony which taken by itself leads to the inference not only that a crime has been committed but also that the defendant is implicated in the crime. If you do not find any evidence to corroborate the statements of any co-defendants then you must find the defendant Ernest Dodd is not guilty.*

Docket No. 37-5 at 101 (emphasis added).

As is previously stated above, a single jury instruction must be viewed in the context of the overall charge when assessing the validity of a conviction. *Cupp*, 414 U.S. at 146-47. The determination depends on whether the single instruction itself, in light of the jury instructions as a whole, "so infected the entire trial that the resulting conviction violates due process." *Id.* at 147.

Here, the instruction concerning the appropriate assessment of co-defendant testimony is in relation to the immediately preceding instruction on mere presence, and so does not instruct the jury to acquit only if there is no evidence to corroborate the statements of co-defendants *in toto*. Petitioner would have this court read the "uncorroborated statements" instruction out of context, which would give the instruction an interpretation the jury would not have reasonably understood it to have in this context. Further, such an interpretation would judge the instruction in isolation, in violation of *Cupp*. *See* 414 U.S. at 146-47. When this instruction is considered in context of the mere presence instruction, and in light of the aforementioned reasonable doubt and presumption of innocence instructions, it cannot be said that this instruction presents an error of constitutional magnitude.

This instruction does not constitute plain error under Tennessee law. To corroborate codefendant testimony, Tennessee common law requires that there "be some fact testified to which is entirely independent of an accomplice's testimony; that fact, taken by itself, must lead to an inference that a crime has been committed and that the defendant is responsible therefor." *State v. Little*, 402 S. W. 3d 202, 212 (Tenn. 2013), *citing State v. Fowler*, 373 S. W. 2d 460, 463 (Tenn. 1963). The instruction in question is simply a restatement of this requirement, and does not constitute plain error as a result.

Petitioner has therefore failed to establish a constitutional violation or plain error under State law sufficient to find actual prejudice to excuse the procedural default of this claim.

**k.    Claim 11- Ineffective Assistance of Trial Counsel (Grounds A-K, M (in part), N)**

Petitioner asserts that, in violation of the Sixth and Fourteenth Amendments, he was denied the effective assistance of trial counsel. Docket No. 23 at 10. Petitioner argues that *Martinez v. Ryan* applies to excuse the procedural default of his ineffectiveness claims. Docket No. 43 at 4-6. Petitioner submits that "*Martinez* also applies to the default of his substantive claims contained in Amended Petition [claims] 1-9, pursuant to *Edwards v. Carpenter*, 529 U. S. 446." *Id.* at 6 n.1.

In *Martinez v. Ryan*, the Supreme Court held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. 1, 17. An ineffectiveness claim is insubstantial, and thus insufficient to invoke *Martinez*, if "it does not have any merit or . . . it is wholly without factual support, or . . . the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Id.* at 15-16.

In *Trevino v. Thaler*, the Supreme Court expanded the *Martinez* exception to situations where a "state procedural framework, by reason of its design and operation, makes it highly

33

unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 569 U.S. 413, 429 (2013). The Sixth Circuit has held that the *Martinez–Trevino* exception applies in Tennessee cases. *Sutton v. Carpenter*, 745 F. 3d 787, 795 (6th Cir. 2014).

The Sixth Circuit has provided the following framework to evaluate claims under *Martinez*:

> As to these claims, the district court should determine . . . : (1) whether state post-conviction counsel was ineffective; and (2) whether [Petitioner's] claims of ineffective assistance of counsel were "substantial" within the meaning of *Martinez*, *Sutton*, and *Trevino*. Questions (1) and (2) determine whether there is cause. The next question is (3) whether [Petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [Petitioner] establishes cause and prejudice as to any of his claims, the district court should evaluate such claims on the merits.

*Atkins v. Holloway*, 792 F. 3d 654, 660 (6th Cir. 2015) (internal citations omitted).

Whether post-conviction counsel was ineffective is necessarily connected to the strength of the underlying claim he failed to raise, so "in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*." *Smith v. Carpenter*, No. 3:99-cv-0731, 2018 WL 317429, at *2 (M.D. Tenn. Jan 8, 2018), *quoting Thorne v. Holloway*, No. 3:14-cv-0695, 2014 WL 4411680, at *23 (M.D. Tenn. Sept. 8, 2014), *aff'd sub nom. Thorne v. Lester*, 641 Fed. Appx. 541 (6th Cir. 2016).

If the underlying claim is not sufficiently substantial, "because the 'cause and prejudice' standard is conjunctive rather than disjunctive, the reviewing court would have no need to consider whether the petitioner has established cause to overcome the procedural default, in the form of ineffective assistance of post-conviction counsel." *Thorne v. Holloway*, 2014 WL 4411680, at *23. And if the ineffective assistance of trial counsel claim cannot satisfy actual prejudice, there "could

34

not be a reasonable probability that the result of post-conviction proceedings would have been different." *Id.*, *quoting Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014); overruled on other gorunds by *McKinney v. Ryna*, 813 F. 3d 798, 818 (9ᵗʰ Cir. 2015)(*en banc*)

To establish ineffective assistance of counsel, a petitioner must demonstrate that under the totality of the circumstances, his or her trial counsel performed deficiently and that counsel's performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 695 (1984). As the Supreme Court explained:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. To satisfy this prong, counsel must fulfill his or her duty to investigate—"to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. *Strickland* directs that "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* As the Supreme Court noted:

> . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other

words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id. at 690-91.

As to the "prejudice" inquiry, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams*, 529 U. S. at 391. In essence, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694.

The benchmark for judging any ineffectiveness claim is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also West v. Seabold*, 73 F. 3d 81, 84 (6th Cir. 1996) ("[T]he determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.' "), *citing United States v. Morrow*, 977 F. 2d 222, 229 (6th

Cir. 1992).

On habeas review, whether a state court's application of *Strickland* was unreasonable is a different question than whether counsel's performance fell below *Strickland's* standard. *Harrington v. Richter*, 562 U. S. 86, 101. To obtain habeas relief for ineffective assistance of counsel, a petitioner must show both that the state court judgment does not satisfy the highly deferential standard of 28 U.S.C. § 2254(d), and that counsel's performance fell outside the range of reasonable professional assistance. *Id.* "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

i.     **Grounds A-H- Failure to Raise Claims 1-9**

Grounds A-H maintain that trial counsel was ineffective for failing to raise underlying claims 1-9. Docket No. 23 at 10-11. For the reasons discussed above, these underlying claims do not satisfy the actual prejudice prong of *Coleman v. Thompson*. Petitioner therefore cannot show that post-conviction counsel performed ineffectively in failing to raise these claims, and cannot show a reasonable probability that the post-conviction proceedings would have been different had these claims been raised.

ii.    **Ground I- Failure to Interview and Call Mike Slatton to Testify**

Ground I alleges trial counsel was ineffective for failing to interview Mike Slatton and failing to call him to testify on Petitioner's behalf, where he "could have established that Petitioner did not commit the acts alleged by the prosecution." Docket No. 23 at 11. Petitioner makes no argument as to why the failure to interview Mr. Slatton before trial was error, or how Mr. Slatton's testimony could have shown Petitioner did not commit the acts alleged by the prosecution. Because Petitioner offers only conclusory allegations as support for these arguments, Petitioner cannot show that post-conviction counsel performed ineffectively in failing to interview Mr. Slatton and

call him as a witness, and cannot show a reasonable probability that the post-conviction proceedings would have been different had counsel done so.

### iii. Ground J- Failure to Interview and Cross-Examine the Vogels

Ground J asserts trial counsel was ineffective for "fail[ing] to conduct pretrial interviews of Connie and Lance Vogel and fail[ing] to adequately cross-examine Connie and Lance Vogel about inconsistencies in their statements about events occurring at their apartment." Docket No. 23 at 11. Ground J further asserts trial counsel was ineffective for failing to cross-examine Mr. Vogel to demonstrate that his testimony was "designed to place blame on Petitioner and to protect Connie Vogel." *Id.* at 12.

Petitioner provides no argument to support how pretrial interviews of the Vogels would have impacted the result of his trial, and Petitioner fails to state what, if any, alleged inconsistencies would have been brought out through their cross-examinations. Petitioner also offers no reasoning as to how cross-examining Mr. Vogel would have diminished his credibility. Because Petitioner offers only conclusory allegations as support for these arguments, Petitioner cannot show that post-conviction counsel performed ineffectively in failing to interview and "adequately" cross-examine the Vogels, and cannot show a reasonable probability that the postconviction proceedings would have been different had counsel done so.

### iv. Ground K- Failure to Investigate Connie Vogel's State Agreement

Ground K submits that trial counsel was ineffective for failing to investigate the alleged agreement between Ms. Vogel and the State. Docket No. 23 at 12. Ground K further submits that trial counsel failed to inform Petitioner that Ms. Vogel would be testifying against him before the charges against her were resolved, and that had Petitioner known this, he would have accepted the prosecution's plea offer. *Id.*

38

For the reasons discussed above, Petitioner's allegation that an agreement existed between Ms. Vogel and the State is baseless. Petitioner therefore cannot show that trial counsel made an unreasonable decision in choosing not to investigate the unsupported existence of an agreement, and cannot show a reasonable probability that the post-conviction proceedings would have been different if counsel had conducted such an investigation. Petitioner's argument that he was unaware Ms. Vogel would be testifying is equally baseless, as Petitioner provides no evidence to support this argument. Accordingly, the procedural default of this ground cannot be excused.

### v.    Ground M- Failure to File Motion to Suppress

Ground M (in part) asserts that trial counsel was ineffective for failing to file a motion to suppress evidence obtained from a search of Ronnie Minton's residence. Docket No. 23 at 12. Petitioner raised this ground in the post-conviction trial court (Docket No. 37-15 at 27), and relief was denied (*Id.* at 67). Petitioner subsequently defaulted this ground on post-conviction appellate review by failing to raise it before the Tennessee Court of Criminal Appeals. *See* Docket No. 37-17. *Martinez* applies to excuse the procedural default of an ineffective assistance of counsel claim only "if, *in the initial-review collateral proceeding*, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17 (emphasis added). This claim was raised at the initial-review collateral proceeding, and counsel could not have been ineffective for failing to raise this claim as a result. *Martinez* therefore does not apply to excuse the procedural default of this ground.

### vi.    Ground N– Failure to Raise Allegedly Exhausted Claims

Ground N contends that trial counsel was ineffective for "fail[ing] to raise any or all claims raised in this amended petition which are alleged not to have been properly presented and exhausted in the state court," including claims 1-13. Docket No. 23 at 12-13. This ground does not state a new ineffectiveness argument, but instead reiterates each of the preceding ineffective

assistance of trial counsel grounds. Because this ground does not itself allege a constitutional violation or violation of federal law for which habeas relief can be granted, it is not cognizable on habeas review and cannot be considered. 28 U.S.C. § 2254(a).

**l.    Claim 12- Ineffective Assistance of Appellate Counsel**

Petitioner contends that he was denied the effective assistance of counsel on direct appeal. Docket No. 23 at 13. To support this claim, Petitioner cites appellate counsel's failure to raise claims 1-9 and failure "to raise any or all claims raised in this amended petition which are alleged not to have been properly and fully presented and exhausted in the state courts (including in the post-conviction trial court), and/or procedurally defaulted, including but not limited to [claims] 1-11 & 13." *Id.* at 13-15.

Petitioner has provided no argument to excuse this default for cause, and has accordingly failed to satisfy this requirement. Petitioner has likewise failed to show actual prejudice, as each of the claims underlying this claim have been shown to lack merit. It thus cannot be maintained that appellate counsel's failure to raise these claims constituted ineffective assistance, as Petitioner cannot satisfy the deficient performance and prejudice prongs of *Strickland* by relying solely on meritless claims. *See* 466 U.S. at 687. Additionally, for the reasons discussed below, claim 13 is equally lacking in merit and cannot be relied on to show actual prejudice as to this claim. Petitioner therefore cannot show cause or actual prejudice to excuse the procedural default of this claim.

**m.    Claim 13- Cumulative Error**

Petitioner submits that the cumulative effect of the errors at trial and on direct appeal deprived him of due process and a fundamentally fair trial in violation of the Sixth and

Fourteenth Amendments. Docket No. 23 at 15.

Petitioner did not raise his cumulative error claim in any post-conviction court, and thus

procedurally defaulted this claim with regard to underlying claims 11 and 12. And for the aforementioned reasons, Petitioner cannot use *Martinez* to excuse the default of this claim. As a result, the discussion of the properly exhausted portion of claim 13 that follows below considers only claims 1-10.

### C. Petitioner's Exhausted Claims

Petitioner properly exhausted claims 10, 11L, 11M (in part), and 13 (in part) in the Tennessee state courts. However, even when a claim has been properly exhausted, a court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A claim asserting only a violation of state law, even if properly exhausted, is not cognizable on federal habeas review. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

For the reasons stated below, the undersigned finds that Petitioner's properly exhausted claims do not support granting a writ of habeas corpus.

### 1. Claim 10- Insufficiency of the Evidence

Petitioner submits that there is insufficient evidence to support either of his convictions because the State "did not prove beyond a reasonable doubt that Petitioner was even at the Vogels' apartment during the purported time frame when the alleged acts took place." Docket No. 23 at 9-10.

The Tennessee Court of Criminal Appeals addressed this argument on direct appeal as follows:

> Appellant was convicted of initiating a process to manufacture methamphetamine. Tennessee Code Annotated section 39-17-435 makes it an offense for a person to "knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine." It is not a defense if "the

41

chemical reaction is not complete, that no methamphetamine was actually created, or that the process would not actually create methamphetamine if completed." T.C.A. § 39-17-435(b). "Initiates" is defined in the statute as "begin[ing] the extraction of an immediate methamphetamine precursor from a commercial product, . . . begin[ing] the active modification of a commercial product for use in methamphetamine creation, or . . . heat[ing] or combin[ing] any substance or substances that can be used in methamphetamine production." Id. § 39-17-435(c).

Appellant was also convicted of attempt to promote the manufacture of methamphetamine. A person who [sic] promotes methamphetamine manufacture when they:

Sell[], purchase[], acquire[], or deliver[] any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use[.] T.C.A. § 39-17-433(a)(1).

Viewing the evidence in a light most favorable to the State, the proof offered at trial showed that Appellant was involved in the cooking of methamphetamine at the Vogel's apartment. According to testimony from Ms. Vogel, Appellant weighed the lye, cut open the cold packs, and poured the ammonium nitrate into a plastic bag. Mr. Vogel stated that Appellant was holding a jug with a hose coming out of it and operated the hose while Mr. Vogel dropped aluminum foil balls in to the mixture in the jug to cause a reaction. Appellant himself admitted to police that he was at the apartment on the night of the crime and that he used methamphetamine. Appellant was seen leaving the apartment just moments before the authorities went to the door of the apartment where they smelled a strong odor of methamphetamine and air freshener. When a search warrant was executed, numerous precursors for methamphetamine production were located in the apartment. Further, Appellant admitted that he concealed methamphetamine from the police by eating it. As detailed above, the independent testimony of the officers conducting surveillance coupled with Appellant's admission of ingesting methamphetamine and his proximity to the apartment at the time when methamphetamine was being produced, although not extending to every part of the co-defendants' testimony, sufficiently corroborated the testimony of both Mr. and Mrs. Vogel. Thus, the jury had before it sufficient evidence to conclude that Appellant was guilty of initiating a process to manufacture methamphetamine and attempt to promote the manufacture of methamphetamine. Appellant is not entitled to relief on this issue.

Docket No. 37-11 at 7.

In *Jackson v. Virginia*, the Supreme Court set forth the standard for reviewing the legal

sufficiency of the evidence in support of a conviction:

. . . [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly

instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

443 U.S. 307, 318-19 (1979) (internal citations omitted). Upon review, "all of the evidence is to be considered in the light most favorable to the prosecution." *Id.* at 319. If any rational trier of fact would accept the evidence as establishing each essential element of the crime beyond a reasonable doubt, the *Jackson* standard of review is satisfied. *Coleman v. Johnson*, 566 U.S. 650, 654 (2012).

*Jackson* claims face a high bar on habeas review in federal court because they are subject to two layers of judicial deference. *Id.* at 651. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* (internal quotation marks omitted), *quoting Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). Second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Id.*, *quoting Renico v. Lett*, 559 U.S. 766, 773 (2010).

In viewing the evidence in the light most favorable to the State, the undersigned finds that the Tennessee state courts could conclude that the evidence was sufficient to support Petitioner's conviction. Based on the proof offered at trial, including the testimony of police officers and the Vogels, as well as Petitioner's own statements, the Tennessee Court of Criminal Appeals appropriately held that "the jury had before it sufficient evidence to conclude that [Petitioner] was guilty." Docket No. 37-11 at 10. For these reasons, the undersigned finds that the state court's

43

decision was not objectively unreasonable. Petitioner is therefore not entitled to relief on this claim.

### 2.    Claim 11- Ineffective Assistance of Trial Counsel (Grounds L and M (in part))

With regard to claim 11L, Petitioner argues that "[t]rial counsel failed to investigate the validity of, and inadmissibility of, Petitioner's prior convictions and thus erroneously led Petitioner not to testify." Docket No. 23 at 12. With regard to the properly exhausted portion of claim 11M, Petitioner argues that "[t]rial counsel failed to conduct a pretrial interview of, and call as a necessary witness, Ronnie Minton who could have established that Petitioner did not commit the acts alleged by the prosecution." *Id.* Petitioner also submits that the state court required him to prove his ineffectiveness claims by clear and convincing evidence, that "[t]his appears to be a higher standard than that required by *Strickland*," and that the state court's decision on claims 11L and 11M "is 'contrary to' *Strickland*, and may provide grounds for federal habeas corpus relief." Docket No. 43 at 3.

Petitioner's assertion that the state courts required a higher standard of review than is required by *Strickland* incorrectly blends the Tennessee post-conviction standard with the *Strickland* standard. At the post-conviction evidentiary hearing, the state court evaluated these ineffectiveness claims and ultimately concluded that they were not proven by clear and convincing evidence. Docket No. 37-16 at 27-29. On post-conviction appeal, the Tennessee Court of Criminal Appeals discussed the standard of review they applied as follows:

> The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S. W. at 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S. W. 3d 450, 456 (Tenn. 2001). Additionally, "questions

concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Docket No. 37-20 at 5 (footnotes omitted).

The Tennessee post-conviction standard does not bear on the *Strickland* standard itself, but rather requires a preliminary showing as to the fact of counsel's alleged ineffectiveness. Once that showing is made by clear and convincing evidence, the state court then determines whether counsel's error satisfies *Strickland*. The Tennessee Court of Appeals therefore did not apply an impermissible standard to Petitioner's ineffectiveness claims.

With respect to the claims themselves, the Tennessee Court of Criminal Appeals addressed Claim 11L on post-conviction appeal as follows:

Turning now to the merits of the issue, the Petitioner argues that the post-conviction court's conclusion that his criminal history would have been admissible had he testified was error because there was no proof introduced that the State complied with Tennessee Rule of Evidence 609 regarding impeachment by criminal convictions. The Petitioner maintains that trial counsel was deficient because "[he] should have been able to fully advise the [Petitioner] [about] whether the State had filed a notice of intent to use prior convictions for impeachment purposes, as well as the [t]rial [c]ourt's ruling" on the matter.

When denying the petition, the post-conviction court stated that "[t]here was no real question . . . that [the Petitioner's] prior convictions would have been brought up." As the Petitioner points out, there is no evidence in the post-conviction record that the State filed a notice of intent to impeach or that the trial court ruled on any such motion. Also, the Petitioner did not ask trial counsel if he recalled whether the State had filed a notice of intent to impeach. Therefore, from the record before us, it is impossible to ascertain whether the State filed a notice pursuant to Rule 609 or whether the trial court had a chance to rule on any such motion. To the extent that the post-conviction court made a legal conclusion that previous convictions would have been per se admissible had the Petitioner testified, that conclusion is not supported by the record. However, that does not conclude our inquiry.

Regardless of whether the Petitioner's prior convictions would have been admissible pursuant to Rule 609, the possibility still existed that evidence of the

45

prior convictions may have been admitted into evidence had the Petitioner chosen to testify at trial. *See Michael Braxton v. State,* No. M2006-01894-CCA-R3-PC, 2007 WL 1988141, at *4 (Tenn. Crim. App. July 10, 2007). In *State v. Kendricks*, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996), this court held that "irrespective of admissibility under Rule 609, a conviction may be used to contradict a witness who opens the door and testifies on direct examination that he or she has never been convicted of a crime, or to counter some other facet of direct testimony." Therefore, even if the State did not file a notice of intent to impeach, counsel's advice to the Petitioner that his prior convictions might have been introduced were he to testify was not without legal merit. The trial court specifically questioned the Petitioner regarding his decision to not testify, and the Petitioner indicated that he had been involved in the decision-making process, that he understood the decision was his to make, and that he had chosen to not testify. We conclude that trial counsel properly advised the Petitioner of his right to testify along with the potential perils that might arise were he to exercise that right. The Petitioner's argument is without merit.

Docket No. 37-20 at 6-7 (footnotes omitted).

Petitioner has failed to show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts. The state appeals court credited trial counsel's testimony that he informed Petitioner of his right not to testify (Docket No. 37-16 at 21), and determined that counsel's advice on the admissibility of Petitioner's past convictions was not in error (Docket No. 37-20 at 7). Trial counsel's performance does not satisfy either prong of *Strickland*, and this claim does not warrant habeas relief.

The Tennessee Court of Criminal Appeals addressed the properly exhausted portion of Claim 11M on post-conviction appeal as follows:

Next, the Petitioner contends that trial counsel was ineffective for not calling Mr. Minton as a defense witness. The Petitioner also asserts that the post-conviction court "did not make the proper assessment in determining whether [Mr.] Minton was a material witness" and did not determine whether his testimony would have been admissible at trial. Also, the Petitioner asserts that the post-conviction court's determination that Mr. Minton's testimony would have been unfavorable to the defense was in error.

When a petitioner presents a witness as [*sic*] the post-conviction hearing that he asserts should have testified at trial, the post-conviction court must

46

determine whether the witness's testimony would have been admissible at trial and material to the defense. *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008).

If the post-conviction court determines that the proffered testimony would not have been admissible at trial or that, even if admissible, it would not have materially aided the petitioner's defense at trial, the post-conviction court is justified in finding that trial counsel was not deficient in failing to call that witness at trial. Id.

We find no flaw in the post-conviction court's assessment of the Petitioner's claim. The Petitioner apparently draws a distinction between a determination that a witness's testimony would be "material" and that it would be "favorable." However, we find no such distinction: the post-conviction court's finding that Mr. Minton's testimony would not have been favorable to the defense equates to a determination that the testimony would not have "materially aided" the defense. Based on this finding, there was no need to explicitly assess the admissibility of Mr. Minton's testimony. See id. Therefore, we cannot agree that the post-conviction court's analysis was deficient in this respect.

Furthermore, our review leads us to agree with the post-conviction court's conclusion. At the evidentiary hearing, trial counsel testified that he spoke with Mr. Minton prior to trial and that Mr. Minton informed him that the Petitioner had been cooking methamphetamine at the Vogels' apartment on the night in question. Understandably, trial counsel concluded that this testimony would be detrimental to the Petitioner's case. The post-conviction court accredited trial counsel's testimony that he spoke with the Petitioner about not calling Mr. Minton and that the Petitioner agreed with that trial strategy. Mr. Minton testified at the hearing that the Petitioner had been at the Vogels' apartment the entire night before and day of his arrest, except for an approximately one-hour period when the men went to Wal-Mart and bought lithium batteries, a precursor for the manufacture of methamphetamine. That testimony directly undermines the Petitioner's assertion at the evidentiary hearing that Mr. Minton's testimony would have called into question Mr. Vogel's testimony that the Petitioner was at the Vogels' apartment all night. The Petitioner has pointed to nothing in Mr. Minton's evidentiary hearing testimony that would have been favorable to the defense at trial. Accordingly, the Petitioner has not proven either deficient performance or prejudice and is not entitled to relief on this issue.

*Id.* at 7-8.

Petitioner has failed to show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts. Trial counsel reasonably determined, based on Mr. Minton's statements,

that his testimony would have been detrimental to Petitioner's case. Trial counsel's performance does not satisfy either prong of *Strickland*, and this claim does not warrant habeas relief.

### 3. Claim 13- Cumulative Error

Petitioner argues that "the cumulative effect of the errors at Petitioner's trial and direct appeal deprived Petitioner of due process and a fundamentally fair trial." Docket No. 23 at 15. Petitioner maintains that "any number of the various claims that will provide grounds for Petitioner's cumulative error claim in these proceedings were not adjudicated on the merits in state court," and that, as a result, "this Court would have to decide any cumulative error claim *de novo*, free from § 2254(d)." Docket No. 43 at 7. Petitioner contends that "habeas relief, on *de novo* review, is available for an assertion of cumulative error." *Id.*

The law of the Sixth Circuit is that "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F. 3d 789, 816 (6th Cir. 2006). "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Keith v. Mitchell*, 455 F. 3d 662, 679 (6th Cir. 2006), *quoting Scott v. Elo*, 302 F. 3d 598, 607 (6th Cir. 2002). Even if this court were to entertain Petitioner's cumulative error claim, the claims underlying this assertion have been shown to be without merit, such that there was no cumulative error, and Petitioner would not be entitled to relief on this claim. *See Keith*, 455 F. 3d at 679 (holding that where the individual claims are all essentially meritless, cumulative error cannot be shown); *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000) (same).

Petitioner incorrectly asserts that because the underlying claims were not adjudicated on the merits in state court, they are entitled to *de novo* review. As is discussed above, each of the

48

underlying claims were either procedurally defaulted and unexcused (which excludes them from habeas review), or were properly exhausted and are subject to review under 28 U.S.C. § 2254(d). None of these underlying claims are entitled to *de novo* review.

Petitioner also contends that *Taylor v. Kentucky* supports a claim of cumulative error here, but *Taylor* is inapplicable to the case at bar. *Taylor* involved four separate underlying errors that each had independent merit and cumulatively warranted finding a Fourteenth Amendment violation on direct appeal. *See* 436 U.S. 478, 487-88 (1978). Here, none of Petitioner's underlying claims have been shown to have merit, and the Supreme Court has never permitted the cumulation of multiple constitutional violations to grant relief on habeas review.

Petitioner is therefore not entitled to habeas relief on this claim.

## V. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22(b) provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing is made when "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), *quoting Barefoot v. Estelle*, 463 U.S. 880, 922, n. 4 (1983). Specifically, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

49

The undersigned finds that no reasonable jurist would differ on the disposition of this motion, and recommends that a certificate of appealability be denied as to all claims.

## VI.    RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Petitioner's Amended Petition for Writ of Habeas Corpus be **DENIED** and **DISMISSED WITH PREJUDICE**. The undersigned recommends that a certificate of appealability be **DENIED** as to all claims. The undersigned further recommends that the Petitioner's request for an evidentiary hearing be **DENIED** as to all claims.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**